**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Vernon TANK, Defendant–
Appellant.**

No. 98–10001.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1999.

Decided Jan. 4, 2000.

Steven Iriki, San Francisco, California, for the defendant-appellant.

D. Anthony West, Assistant United States Attorney, San Jose, California, for the plaintiff-appellee.

Before: PREGERSON and WIGGINS, Circuit Judges, and CARTER,[1] District Judge.

PREGERSON, Circuit Judge:

Appellant David Vernon Tank appeals his conviction and sentence for conspiring to sexually exploit a child for the purpose of producing a sexually explicit visual depiction in violation of 18 U.S.C. §§ 2251(a) and (d); conspiring to engage in the receipt and distribution of sexually explicit images of children in violation of 18 U.S.C. §§ 2252(a) and (b)(1); and distributing sexually explicit images of a child to another person in violation of 18 U.S.C. § 2252(a).

Specifically, Tank appeals the district court's decisions regarding: (1) the sufficiency of the foundation for admission into evidence of chat room [2] log printouts;[3] (2) the legality of the seizure under the Fourth Amendment of a Zip disk found in his car; (3) the sufficiency of the evidence to support his convictions; and (4) the application of the Sentencing Guidelines. We affirm Tank's convictions and remand for resentencing.

## I.

## BACKGROUND

Tank belonged to a sixteen-member Internet chat room called the Orchid Club.[4] Members of the Orchid Club discussed, traded, and produced child pornography. While online in the chat room, Orchid Club members traded digital pornographic images of children.

Ronald Riva, another member of the Orchid Club, was arrested on a child molestation charge. A search of Riva's home and computer files revealed thousands of pornographic pictures of children. The search also revealed computer text files containing "recorded" online chat room discussions that took place among members of the Orchid Club. Riva's computer was programmed to save all of the conversations among Orchid Club members as text files whenever he was online. Before any Orchid Club member was investigated or arrested, Riva had deleted from his computer nonsexual conversations and extraneous material, such as date and time stamps, to decrease the size of the text files and free space on his hard drive. These text files constitute the chat room logs at issue. The evidence seized from Riva implicated other Orchid Club members, including Tank.

Based on this evidence, U.S. Customs agents obtained and executed an arrest warrant for Tank and a search warrant for his home. The search warrant did not include Tank's car. Tank was apprehended in his car less than a block from his house and placed under arrest for computer-related child pornography offenses. Within minutes of the arrest, the officer drove Tank's car back to Tank's house, searched the car, and found a Zip disk

---

1. The Honorable David O. Carter, United States District Judge for the Central District of California, sitting by designation.

2. A "chat room" is a public or private Internet site that allows people to send "real time" typed messages to others who are simultaneously connected to that Internet site.

3. The only evidentiary issue raised by Tank concerning the chat room log printouts is whether a proper foundation was laid for the district court to admit the logs into evidence. Tank did not argue on appeal that the logs were inadmissible under Fed.R.Evid. 403 (unfair prejudice or misleading to the jury), 801(d)(2) (party or co-conspirator admission), 802 (hearsay), 1002 (best evidence), or any other rule.

4. The Orchid Club was a private, password protected chat room. We have already summarized the Orchid Club's activities in deciding an appeal by another of Tank's co-conspirators. *See United States v. Laney,* 189 F.3d 954, 957–58 (9th Cir.1999).

inside a backpack. The Zip disk was later shown to contain pornographic images of children that Tank had distributed to other Orchid Club members online.

At an evidentiary hearing, Tank argued that the district court should not admit the chat room logs into evidence because the government had laid an insufficient foundation. Tank objected that there was no foundation for admission of the chat room log printouts into evidence because: (1) they were not complete, and (2) undetectable "material alterations," such as changes in either the substance or the names appearing in the chat room logs, could have been made by Riva. The district court ruled that Tank's objection went to the evidentiary weight of the logs rather than to their admissibility, and allowed the logs into evidence.

Tank also moved to suppress the Zip disk found in his car on the ground that it was illegally seized under the Fourth Amendment. The district court denied the motion to suppress because it found that the car search was conducted incident to Tank's arrest.

The jury convicted Tank on all three counts, and the district court sentenced Tank to 235 months of imprisonment.

## II.

## CHAT ROOM LOGS

■ We review a district court's finding that evidence is supported by a proper foundation for an abuse of discretion. *See United States v. Santiago*, 46 F.3d 885, 888 (9th Cir.1995). The foundational "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R.Evid. 901(a); *see also United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). "The government need only make a prima facie showing of authenticity, as '[t]he rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir.1985) (quoting 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 901(a)[01], at 901–16 to –17 (1983)). The government must also establish a connection between the proffered evidence and the defendant. *See id.*

■ The government made a prima facie showing of authenticity because it presented evidence sufficient to allow a reasonable juror to find that the chat room log printouts were authenticated. In testimony at the evidentiary hearing and at trial, Riva explained how he created the logs with his computer and stated that the printouts, which did not contain the deleted material, appeared to be an accurate representation of the chat room conversations among members of the Orchid Club. *See United States v. Catabran*, 836 F.2d 453, 458 (9th Cir.1988) ("Any question as to the accuracy of the printouts ... would have affected only the weight of the printouts, not their admissibility."). Furthermore, the parties vigorously argued the issue of completeness of the chat room log evidence to the jury. *See United States v. Soulard*, 730 F.2d 1292, 1298 (9th Cir.1984) ("[O]nce adequate foundational showings of authenticity and relevancy have been made, the issue of completeness then bears on the Government's burden of proof and is an issue for the jury to resolve.").

The government also established a connection between Tank and the chat room log printouts. There is no question that the chat room log printouts were relevant to prove the conspiracy charge in the indictment and Tank's participation in the conspiracy. Tank admitted that he used the screen name "Cessna" when he participated in one of the conversations recorded in the chat room log printouts. Additionally, several co-conspirators testified that Tank used the chat room screen name "Cessna" that appeared throughout the printouts. They further testified that

when they arranged a meeting with the person who used the screen name "Cessna," it was Tank who showed up.

■ On the record before us, it is clear that the government made an adequate foundational showing of the relevance and the authenticity of the chat room log printouts. Thus, we cannot say that the district court abused its discretion by admitting the printouts into evidence and allowing the jury to decide what weight to give that evidence.[5]

## III.

## SEARCH AND SEIZURE

■ Tank moved to suppress the Zip disk found in his car as the fruit of an illegal search. The district court properly denied the motion, finding that: (1) the car search was incident to Tank's arrest, and (2) it made no difference that the Zip disk was inside a backpack, which was in plain view in the car.[6]

■ We review a motion to suppress de novo and any factual findings made at the suppression hearing for clear error. *See United States v. Negrete–Gonzales,* 966 F.2d 1277, 1282 (9th Cir.1992). We have unequivocally held that the standard for a valid "search incident to arrest" is: "[g]iven a lawful arrest, it is enough that the search [of the car] be roughly contemporaneous with the arrest." *United States v. Moorehead,* 57 F.3d 875, 878 (9th Cir. 1995).

■ It is undisputed that Tank was lawfully arrested. As was the case in *Moorehead,* the agents had an arrest warrant. The only other requirement for a valid "search incident to arrest" is that the search be "roughly contemporaneous" with the arrest. Here, the arresting officer searched the car within minutes of the arrest, thereby satisfying the requirement that a search incident to a lawful arrest be conducted roughly contemporaneously with the arrest.[7] Because the lawful ar-

---

**5.** Tank also argues that this court should apply the same criteria used to determine the admissibility of audiotapes produced and proffered by the government to determine whether Riva's hard drive was properly authenticated. However, even in the context of audiotapes, the criteria for admissibility are only *guidelines* that can be useful when the *government produced the recording. See United States v. Matta–Ballesteros,* 71 F.3d 754, 768 (9th Cir.1995). Tank's main argument is that the government should be required to attempt recovery of deleted data from computer disks (a technological possibility) to ensure that the files were not materially altered. But any deletions from Riva's hard drive were made by Riva himself, not by the government. Therefore, the deletions go to the weight of the evidence, not to its admissibility. *Cf. Soulard,* 730 F.2d at 1298 (the issue of completeness bears on the government's burden of proof). Nothing prevented Tank from recovering the deleted data to show that "material alterations," if any, were made to the chat room logs. Tank cannot complain that the government offered into evidence only the relevant and not the irrelevant portions of the chat room logs. Tank "had ample opportunity, before and during trial, to examine the [hard drive] to point out 'missing' [data], yet he declined to make this examination." *Id.* at 1298 n. 4.

**6.** Law enforcement officers are permitted to search the entire passenger compartment of a car, including the inside of containers, during a "search incident to arrest." *United States v. Ramos–Oseguera,* 120 F.3d 1028, 1036 (9th Cir.1997) (citing *New York v. Belton,* 453 U.S. 454, 460–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). Since the search of Tank's car was a legitimate "search incident to arrest," it was permissible for the agent to search the backpack and seize the Zip disk.

**7.** Tank relies on *United States v. Ramos–Oseguera,* for the proposition that the search of his car was not incident to his arrest because the search was not "roughly contemporaneous" with the arrest. In *Ramos–Oseguera,* we held that the search was not incident to the arrest because it was not "contemporaneous to the arrest." *Id.* at 1036. *Ramos–Oseguera* does not indicate how much time elapsed between the arrest and the search, but the only reasonable inference is that considerably more time passed between the search and arrest in *Ramos–Oseguera* than in this case. While we surely meant to describe the amount of time that elapsed between the search and the arrest rather than to list dispositive facts, we stated in *Ramos–Oseguera* that the "search occurred after the car was moved [to the police station], the defendants

rest and the search were "roughly contemporaneous," the seizure of the Zip disk comported with the Fourth Amendment under the "search incident to arrest" exception.

## IV.

## SUFFICIENCY OF THE EVIDENCE

■ Tank challenges the sufficiency of the evidence supporting his convictions.[8] Because Tank failed to move for acquittal at trial, we may only review the sufficiency of the evidence for plain error. *See United States v. Morfin*, 151 F.3d 1149, 1151 (9th Cir.1998).

The facts do not support a claim of plain error. In fact, the evidence is more than sufficient to sustain his convictions. Therefore, we cannot reverse Tank's convictions for insufficient evidence.

## V.

## GROUPING OF OFFENSES

■ The probation officer erroneously concluded in the Presentence Report ("PSR") that because conduct punishable under U.S. Sentencing Guidelines Manual[9] ("U.S.S.G.") § 2G2.1 is in the list of fifty offenses excluded from grouping under subsection § 3D1.2(d), conduct punishable under § 2G2.1 can *never* be grouped. In other words, the probation officer incor-

rectly asserted in the PSR that the Sentencing Guidelines do not permit grouping of offenses covered by § 2G2.1 under subsections § 3D1.2(a) *through* § 3D1.2(d). The government urged the district court to follow the interpretation set forth in the PSR. The district court adopted that interpretation and found that Tank's conduct fell into five groups.

■ We review de novo the district court's interpretation of the Sentencing Guidelines and the grouping of offenses. *See United States v. Boos*, 127 F.3d 1207, 1209 (9th Cir.1997). "All counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2.

The interpretation adopted by the district court is incorrect because it precludes grouping under subsections § 3D1.2(a) through § 3D1.2(c) when, on its face, the list of exclusions under § 3D1.2(d) only bars grouping of the listed offense sections under subsection § 3D1.2(d) itself. In fact, the last sentence of § 3D1.2(d) states "*[e]xclusion* of an offense from grouping *under this subsection* does *not* necessarily preclude grouping under another subsection."[10] *See* U.S.S.G. § 3D1.2(d) (emphasis added). Therefore, the district court should have considered grouping under subsections § 3D1.2(a) through § 3D1.2(c) for offenses precluded from grouping un-

---

were inside the police station, and the police decided to have the car towed." 120 F.3d at 1036. Tank attempts to analogize his case to each of these facts, but his arguments miss the mark. The proper inquiry is whether the arrest was "roughly contemporaneous" with the search. *See Moorehead*, 57 F.3d at 878. Here, the search occurred within minutes of the arrest, immediately after Tank's car was moved less than a block to the carport of his house; no additional time elapsed between the arrest and the search.

**8.** Tank also challenges his conviction under 18 U.S.C. § 2252 because, he contends, no evidence supports this conviction other than the Zip disk and chat room logs. However, this argument is vitiated by our determination

that the Zip disk and chat room logs were properly admitted into evidence.

**9.** The U.S. Sentencing Guidelines as amended on November 1, 1995 apply to this case. Hereinafter, U.S. Sentencing Guideline provisions may be referenced by section number only.

**10.** The Sentencing Guidelines clearly refer to § 3D1.2(d) as a "subsection." The fifty excluded sentencing guideline sections listed under § 3D1.2(d) are "excluded from the operation of this *subsection*." U.S.S.G. § 3D1.2 (emphasis added). Furthermore, "certain guidelines are specifically *excluded from* the operation of *subsection (d)*" U.S.S.G. § 3D1.2, comment. (n.6) (emphasis added).

der § 3D1.2(d).[11]

On remand, the district court should reconsider whether Tank's conduct can be grouped under § 3D1.2(a), (b), or (c).[12]

## VI.

## UPWARD ADJUSTMENT FOR ROLE IN THE CONSPIRACY

 We review the district court's determination that Tank was an "organizer or leader" for purposes of a four-level enhancement under U.S.S.G. § 3B1.1 for clear error. *See United States v. Lopez–Sandoval*, 146 F.3d 712, 716 (9th Cir.1998); *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir.1995). The district court need not make specific findings of fact in support of an upward role adjustment. *See Lopez–Sandoval*, 146 F.3d at 716.

### A. Discrepancy in the Judgment

As the government conceded, there is a discrepancy between the total offense level actually imposed by the district court and the two-level enhancement purportedly imposed for Tank's role in the offense by the Judgment and Conviction Order. The two-level enhancement purportedly imposed in the Judgment and Conviction Order would have only yielded a total offense level of 36. To arrive at the total offense level of 38 imposed on Tank, the district court must have actually imposed a four-level enhancement for Tank's role in the offense. A four-level enhancement for Tank's role in the offense can only be imposed if he was an "organizer or leader." *See* U.S.S.G. § 3B1.1(a). The district court's calculation yielding a total offense level of 38 from a two-level enhancement for Tank's role in the offense is clearly erroneous. Therefore, the government

further conceded, and we agree, that it is appropriate to remand for resentencing on the issue of whether Tank's role in the offense warranted an increase in his offense level under § 3B1.1.

### B. Organizer or Leader

The PSR did not recommend an upward adjustment for Tank's role in the offense. At sentencing, however, the government argued that Tank's sentence should be enhanced for his leadership role. The government argued that the defendant was "particularly significant" to the conspiracy because of his "ability to produce child pornography" and, as such, he was the center of "unique influence and importance within the Orchid Club" making the "prime activity of the club possible." The government further alleged that Tank had control over the victims themselves. The district court made no findings of fact in support of an upward role adjustment.

 In *Lopez–Sandoval*, we held that the defendant could not be deemed an "organizer or leader" when the evidence did "not show that he had any control over his co-conspirators; nor [did] it show that he had organizational or decision-making authority." 146 F.3d at 718 (citing *United States v. Avila*, 95 F.3d 887, 890–92 (9th Cir.1996)). The Sentencing Guidelines also clearly indicate that "the defendant must have been the organizer, leader, manager, or supervisor of one or more other [criminally responsible] participants . . . [or must have] exercised management responsibility over the property, assets, or activities of a criminal organization" to merit an upward adjustment. U.S.S.G. § 3B1.1, comment. nn. 1–2. At sentencing, the government argued that Tank had con-

---

**11.** The PSR recommended two groups, the government initially advocated six groups, and the district court found five groups. The Sentencing Guidelines were intended to provide "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses." U.S.S.G. Ch. 1, Pt. A, intro. comment. n. 3. Yet, in this case, the probation officer, the

U.S. Attorney, and the district court each calculated a different offense level.

**12.** At oral argument on appeal, defense counsel apparently conceded that § 3D1.2(b) is the only subsection that could be applicable to the circumstances of this case.

**634**

trol over the victims themselves. The government did not argue at sentencing that Tank had control over his co-conspirators, or that he had organizational or decision-making authority. Therefore, the record before this court is insufficient to support a determination that Tank was an organizer or leader warranting a four-level upward adjustment. Accordingly, this matter is remanded to the district court to reconsider whether the record at trial indicated that Tank had control over his co-conspirators or that he had organizational or decision-making authority.

## VII.

### DOWNWARD ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY

We review the district court's denial of a sentence reduction for acceptance of responsibility for abuse of discretion. *See United States v. Otis,* 127 F.3d 829, 836 (9th Cir.1997), *cert. denied,* 523 U.S. 1066, 118 S.Ct. 1400, 140 L.Ed.2d 657 (1998). The defendant did not clearly demonstrate an affirmative acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). Therefore, the district court did not abuse its discretion in denying a downward adjustment.

## VIII.

On the basis of the foregoing, we AFFIRM Tank's convictions. We REVERSE Tank's sentence in part and REMAND for resentencing consistent with this opinion.