UNITED STATES of America,
Plaintiff–Appellee–Cross–
Appellant,

v.

Robin Leo IRON, Defendant–
Appellant–Cross–
Appellee.

No. 99–30375, 00–30014.

D.C. No. CR–98–00112–JDS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 2001.

Decided July 5, 2001.

Before LAY,* TROTT and BERZON, Circuit Judges.

MEMORANDUM **

Robin Leo Iron appeals his conviction for second degree murder in the death of Norman Dean Fighter, Jr. On appeal, Iron asserts several trial errors, including: (1)

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

the evidence was insufficient to support his conviction; (2) the prosecutor improperly vouched for his witnesses and denigrated the defendant's defense; (3) the trial court erred in admitting an irrelevant cross-examination of a defense witness; (4) eyeglasses admitted into evidence lacked foundation; and (5) the trial court erred in failing to follow a local rule regarding jury selection. We find Iron's arguments have no merit. The Government cross-appeals, arguing that the district court erred in granting Iron a reduction for acceptance of responsibility. We grant the cross-appeal but otherwise affirm the judgment of conviction.

## I. Background

On January 29, 1998, Iron and his three cousins, Dane James Three Irons, Nick Fighter, and Norman Dean Fighter, Jr., obtained alcohol and marijuana and spent the day consuming the intoxicants as they drove around Hardin, Montana in defendant's truck. Eventually they arrived at the house where Dane, Nick, and Norman were staying. Once inside, Nick and the defendant got into a fight. During the fight, the defendant fell to the ground and Nick kicked the defendant in the head, causing defendant's glasses to fall off his face. The defendant crawled to the door, muttering that he was going to get his gun. Nick and Dane, knowing that the defendant had his 22–250 caliber rifle in his truck, ran out the back door and hid in nearby bushes. Norman decided to go outside and talk to the defendant to settle him down. A few minutes later, Nick and Dane heard a muffled shot from the front of the house.

The defendant drove away and Nick and Dane fell asleep in the house. When they awoke, they found Norman's body in the front yard, surrounded by automobile glass, killed from what was later determined to be a close range rifle shot.

Based upon interviews with Nick and Dane, the police interviewed the defendant as a suspect in the crime. The defendant told the police that he remembered driving back to the house with his cousins, but when he arrived, he passed out and never went inside the house. He awoke to find his driver's window broken and his rifle, which had been loaded, empty. He further informed police that he thought he had been in a fight because his head hurt. The defendant allowed the FBI full access to all evidence. The FBI found, inter alia, Norman's blood on the defendant's clothing and boots and portions of brain and skull on the surface of the defendant's truck. Numerous 22–250 shell casings were found at the scene as well. Defendant was tried in the District Court of the District of Montana and found guilty of second degree murder. He was sentenced to 97 months imprisonment.

## II. Discussion

### A. Sufficiency of the Evidence

■ There was sufficient evidence to convict the defendant. Nick's and Dane's testimony shows that the defendant had the motive and opportunity to kill Norman. Vast amounts of physical evidence link the defendant to the crime: the blood on his clothes, the caliber of bullet used to kill Norman, the brain matter and blood on the truck, and the fact that defendant's glasses were found inside the house. Although the defendant essentially attempts to reargue his case, a reasonable jury could clearly have found defendant guilty of Norman's murder.

### B. Improper Vouching

The defendant's argument that the prosecutor engaged in improper trial tactics is also without merit. The Government argues that since the defendant did not object to any of the alleged misconduct at

trial, we review for plain error. *See United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992). We need not address that question because we do not believe that any misconduct took place, and even if there was an error, such error was harmless. *See id.* (holding improper vouching is subject to harmless error analysis).

■■ In a criminal case, the prosecutor cannot use the prestige of the government to suggest to a jury that evidence outside their hearing either supports the truthfulness of a prosecution witness, or suggests that the defendant is guilty. *See United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir.1993). A prosecutor can, however, argue that a defendant is not telling the truth, so long as his argument is based upon reasonable inference from the record. *Id.* Further, once a witness for the prosecution has been attacked on cross-examination, the prosecution can elicit statements from the witness regarding his or her truthfulness on cross-examination. *See United States v. Wallace*, 848 F.2d 1464, 1473–74 (9th Cir.1988).

■■ With this in mind, we have reviewed the record and find that none of the alleged incidents of improper trial tactics have merit. Many of the incidents amount to nothing more than the prosecutor's rehabilitation of witnesses after defense counsel attacked their credibility. Other times, the prosecutor simply attacked the defendant's story as a lie, a proper trial technique given that the prosecutor was arguing from the facts in the record. In sum, our review of the record convinces us that the prosecutor did not cross over the line between proper and improper trial techniques. We therefore reject the defendant's claim of error.

## C. Improper Cross–Examination of Witness Alan Boehm

■■ Defendant's third allegation of error relates to the cross-examination of witness Alan Boehm, a firearm and tool mark examiner with the Montana State Crime Laboratory. Boehm was called by the defense as a firearm expert. In an effort to attack his claim of impartiality and lack of bias, the prosecutor questioned Boehm about his lobbying efforts in the Montana Legislature. Boehm had lobbied the Montana Legislature to not allow the FBI access to the Montana State Crime Laboratory. The defendant argues that the admission of this cross-examination was erroneous.

We do not believe the district court abused its discretion. Boehm's testimony included attacks on the FBI's procedures and conclusions. Given this, his bias against the FBI is clearly a proper subject for cross-examination. *See United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (defining admissible bias as including "a witness' like, dislike, or fear of a party"). Thus, defendant's argument on this point lacks merit.

## D. Admission of Defendant's Eyeglasses

■■ The defendant argues that a pair of glasses that allegedly belonged to him should not have been introduced into evidence because they lacked foundation. The foundational requirement is met by evidence sufficient to allow a reasonable juror to find that the evidence is what its proponent claims. *See United States v. Tank*, 200 F.3d 627, 630 (9th Cir.2000).

Based upon a conversation with Dane, and only three days before trial, an FBI agent went to the residence where Norman was killed, and found a pair of glasses that both Dane and Nick testified belonged to the defendant. The FBI agent testified how he learned of the existence of the glasses, how he recovered the glasses, and where he found the glasses in the residence. This testimony is clearly enough

for a rational juror to decide that the glasses belonged to the defendant. *Id.*

### E. Failure to Follow Local Jury Rule

 Defendant claims that two errors took place during the jury selection process, both involving peremptory challenges. First, Local Rule 326–1(b) requires that the Government exercise its first peremptory, followed by the defendant, who exercises one. After this first round, the Government continues to use one peremptory challenge, and the defendant responds by exercising two challenges. The trial court apparently misread the rule, however, and ordered the defendant to use two challenges in the first round. The only error involved the order of the peremptory challenge use. The defendant was not deprived of any of his peremptory challenges. The second error stems from the Government's last peremptory challenge. When asked to exercise its last peremptory challenge, the prosecutor passed, believing that juror Sharon Noble was one of the twelve remaining jurors. The clerk immediately informed the prosecutor of the error, and the prosecutor quickly asked to strike one of the remaining jurors, moving Noble into the last available spot. Defendant argues that this action violated Local Rule 326–1(b), which provides that a passed peremptory challenge is deemed waived. Neither of the defendant's arguments have merit.

 It is well settled that a district court has broad authority in the administration of peremptory challenges. *See United States v. Annigoni,* 96 F.3d 1132, 1139 (9th Cir.1996) (*en banc*). A district court cannot, however, enforce procedures that affect an impairment or outright denial of a party's peremptory challenges. *Id.* Violations of local rules, such as the violations alleged here, are subject to harmless error analysis. *See, e.g., United States v. $29,959.00 U.S. Currency,* 931 F.2d 549,

553 (9th Cir.1991). Thus, although the district court did not follow Local Rule 326–1(b) when it forced the defendant to exercise two peremptory challenges in the first round, the defendant can show no serious harm that resulted from the error. Regarding the waiver claim, district courts have broad authority to interpret and apply their own rules. *See United States v. Gray,* 876 F.2d 1411, 1414 (9th Cir.1989). The purpose of the rule that treats an unused peremptory challenge as waived is simply to ensure that no party attempts to "save" a peremptory challenge by passing on it. That is clearly not the situation here. The prosecution recanted its peremptory challenge "waiver" almost immediately. The district court was well within its discretion to interpret Rule 326–1(b) as allowing the prosecution to retract its "waiver" under these circumstances.

### F. Acceptance of Responsibility

 Under United States Sentencing Guideline § 3E1.1(a), the district court can grant a 2–level sentence reduction for acceptance of responsibility. The district court granted the defendant such a reduction because it believed the defendant when he told investigators that he had no memory of the events after arriving at the residence. The district court did not err by accepting that story. The defendant's use of intoxicants, the blow to this head, and the odd nature of the killing, all suggest that the defendant's claim not to remember anything after arriving at the residence is at least plausible. Nevertheless, we do not believe that the reduction for acceptance of responsibility was appropriate for the simple fact that the defendant never accepted responsibility for his actions. We do believe, however, that the district court should have another opportunity to evaluate defendant's behavior— which was quite helpful to the investiga-

tors—to determine whether a reduction on another ground is appropriate.

### III. Conclusion

For the above reasons, we reject all of the defendant's claims of error. We further reverse the district court's sentence reduction for acceptance of responsibility, and remand the case to the district court to allow it to review the defendant's sentence.

The judgment of conviction is affirmed; the case is remanded for reevaluation of the sentence.

AFFIRMED AND REMANDED.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.