Filed 1/12/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 10

State of North Dakota, Plaintiff and Appellee

v.

Jennifer Jean Sandvig Thompson, Defendant and Appellant

No. 20090117

Appeal from the District Court of Walsh County, Northeast Judicial District, the Honorable M. Richard Geiger, Judge.

AFFIRMED AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Kelley Marie Riley Cole (argued), Assistant State’s Attorney, 600 Cooper Avenue, Grafton, N.D. 58237, for plaintiff and appellee.

Blake Dylan Hankey (argued), 301 North 3rd Street, 3rd Floor, Suite 300, Grand Forks, N.D. 59203, for defendant and appellant.

State v. Thompson

No. 20090117

Sandstrom, Justice.

[¶1] Jennifer Sandvig Thompson appeals from a criminal judgment entered after a jury found her guilty of simple assault upon a family or household member.  She argues the district court should not have admitted into evidence testimony about text messages sent from her cell phone to the complainant’s cell phone and a picture of one text message.  She claims the evidence was not relevant, the State failed to provide proper foundation for the evidence, the messages were hearsay, and a picture of one message was improperly admitted for impeachment.  We affirm the judgment.  Because the judgment states it was entered upon a guilty plea, however, we remand to the district court to correct that clerical error. 

I

[¶2] The State charged Thompson with simple assault upon a family or household member under N.D.C.C. § 12.1-17-01, alleging that on October 31, 2008, she willfully caused bodily injury to her husband by punching him several times in the face.  

[¶3] Thompson and the complainant were married and had three children together.  According to the complainant, on October 31, 2008, he and Thompson were in the process of moving from a farm near Grafton to Grafton, and the complainant was staying on the farm while Thompson and the children were living in Grafton.  Thompson admits she sent several text messages from her cell phone to the complainant’s cell phone that morning, asking the complainant to take the children to school and also asking him for money.  Thompson claimed she needed money to buy the children Halloween costumes.  According to the complainant, he took the children to school with Thompson, and he then drove her back to the Grafton residence to drop her off so he could go to work.  The complainant testified Thompson refused to get out of the vehicle and demanded $150.  He claimed he offered to take her shopping instead, and she refused and demanded cash.  The complainant testified he eventually drove to the police station for assistance, and when Thompson still refused to get out of the vehicle, the sheriff assisted in removing Thompson from the vehicle and the complainant went to work. 

[¶4] During the course of the day, Thompson sent the complainant several additional text messages demanding money.  The complainant testified he transferred $60 to Thompson’s bank account at about noon.  After the complainant finished work, he joined Thompson and the children trick-or-treating until about 9:30 p.m.  Thereafter, the complainant gave Thompson $20, and she went to a bar while he returned to the Grafton residence to watch the children.  At approximately 10:30 p.m., Thompson began calling and sending text messages to the complainant for additional  money.  The complainant replied he was not going to give her any more money.  At approximately 11 p.m., Thompson returned to the Grafton residence and asked the complainant for money. 

[¶5] Shortly after 11 p.m., law enforcement officers were called to the residence on a domestic violence call.  When the officers arrived, they observed the complainant holding a Kleenex over his left eye.  The complainant testified there had been an argument about money and Thompson hit him several times in the back and the face when he tried to leave the premises.  The complainant denied hitting or pushing Thompson.  A law enforcement officer testified Thompson initially told the officers she had hit the complainant and he had not hurt her.  Thompson was arrested for simple assault and transported to the law enforcement center.  According to the officers, Thompson’s mother arrived at the law enforcement center, and after talking to her mother, Thompson told the officers the complainant had pushed her into a radiator before she hit him.   

[¶6] Thompson claimed her actions were self-defense, and she made a pre-trial motion to prohibit the State from “offering any testimony or evidence regarding text messages sent” to the complainant.  The district court denied Thompson’s motion.

[¶7] At trial, the State introduced testimony by the complainant about text messages he received on his cell phone on October 31, 2008, from Thompson’s cell phone, including one message with profane and threatening language sent at 8:20 a.m. During Thompson’s case, she also testified about text messages she sent that day from her phone to the complainant’s phone.  On cross-examination, Thompson testified she could have sent one specific profane and threatening text message to the complainant’s phone at 8:20 a.m., but the complainant may have used her phone to send the message to himself while she was in a store.  The court then allowed the State to introduce a picture of that text message.  The jury found Thompson guilty of simple assault upon a family or household member.  

[¶8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The appeal from the criminal judgment is timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29-28-06.  

II

[¶9] Thompson argues evidence regarding the text messages was not relevant and was inadmissible.

[¶10] Relevant evidence is generally admissible, and irrelevant evidence is not admissible.  N.D.R.Ev. 402.  “‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  N.D.R.Ev. 401.  “‘The test to determine whether evidence is relevant or irrelevant is whether the evidence would reasonably and actually tend to prove or disprove any matter of fact in issue.’”  
State v. Osier
, 1999 ND 28, ¶ 19, 590 N.W.2d 205 (quoting 
State v. Buckley
, 325 N.W.2d 169, 172 (N.D. 1982)).  A district court has broad discretion in deciding whether proffered evidence is relevant, and we will not reverse the district court’s decision to admit or exclude evidence unless it abused its discretion by acting in an arbitrary, unreasonable, or unconscionable manner.  
State v. Buchholz
, 2006 ND 227, ¶ 7, 723 N.W.2d 534.  A district court also may abuse its discretion if it misinterprets or misapplies the law.  
State v. Mosbrucker
, 2008 ND 219, ¶ 6, 758 N.W.2d 663.  

[¶11] Here, the district court ruled testimony about the text messages helped explain Thompson’s state of mind and the circumstances of the events on October 31, 2008.  Thompson claimed she acted in self-defense, and the text messages provided context for the events on that day and could reasonably and actually help to prove or disprove factual matters pertaining to the charge against Thompson and her self-defense claim.  We conclude the court’s ruling was not arbitrary, capricious, or unreasonable and was not an abuse of discretion.

III

[¶12] Thompson argues the State failed to provide a proper foundation for the evidence relating to text messages sent to the complainant’s cell phone.  She argues “text messages are inherently unreliable because of their relative anonymity and can rarely be connected, to a certainty, with a specific author.”  Thompson’s argument involves two separate items of evidence regarding the text messages: (1) the complainant’s testimony on direct examination about the content of text messages he received on his cell phone on October 31, 2008; and (2) a picture of one text message he received on his cell phone at 8:20 a.m. that day, which contained a profane and threatening message and was introduced into evidence during cross-examination of Thompson.

[¶13] A touchstone for an effective appeal of an issue requires the issue to be properly raised in the district court so that court can intelligently rule on the issue.  
Osier
, 1999 ND 28, ¶ 14, 590 N.W.2d 205.  Under N.D.R.Ev. 103(a)(1), “[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.”

[¶14] Thompson’s pretrial motion sought to prohibit the State from offering any testimony or evidence about the text messages.  During argument on her motion in limine, Thompson asserted evidence about the text messages lacked proper foundation and was hearsay.  In addressing the foundation issue, she argued there was no way to establish who actually sent the text messages and whether the messages were accurately transcribed.

[¶15] The district court denied Thompson’s pretrial motion, ruling the text messages went to motive and served as a statement against interest.  The court decided the State would be allowed to present testimony regarding the contents of text messages received by the complainant, because the messages were “akin to verbal statements” by Thompson.  The court explained, however, the State must provide foundational evidence that the complainant knew the messages came from Thompson’s phone and her phone number.

[¶16] At trial, the complainant testified on direct examination about several text messages sent to him on October 31, 2008.  He testified he knew the text messages were from Thompson because the messages said “Fr: Jen” at the beginning, which was the way he stored her phone number in his cell phone, and the end of the message included her phone number and her signature, “cuzImJenIcan,” which he was familiar with.  During the complainant’s testimony about the text messages, Thompson made a hearsay objection.  The district court overruled that objection, ruling the messages were “a declaration against interest and therefore not subject to [the] hearsay rule,” and also were not used to prove the truth of the matter asserted.  The complainant thereafter testified without further objection that during the course of several text messages that day, Thompson made threats toward him, including one specific profane threat.  

[¶17] During Thompson’s case, she testified she sent several text messages to the complainant on October 31, 2008.  On cross-examination, she testified about the text messages, including that she could have sent the complainant one specific profane and threatening text message.  At one point during the State’s cross-examination of Thompson about the text messages,  the court overruled her attorney’s objection under N.D.R.Ev. 404(b), but admonished the jury that evidence about the text messages was allowed for a limited purpose to show Thompson’s state of mind.  During further cross-examination of Thompson, the State offered into evidence a picture of one specific text message sent at 8:20 a.m., which included profane and threatening language.  Thompson specifically objected under N.D.R.Ev. 608(b).  The court allowed the State to use the picture to refresh Thompson’s memory, stating if she acknowledged sending the message without any equivocation, the State would be foreclosed from further inquiry, but if she denied sending the message, the State could offer the picture subject to further objection.

[¶18] Thompson thereafter testified the complainant may have used her phone to send that message to himself, and the court allowed the State to introduce the picture of the text message with further “appropriate evidentiary foundation.”  The State elicited further foundational testimony from Thompson about her cell phone number and her signature for text messages, which were both depicted on the picture of the text message.  The State again offered the picture of the text message into evidence, and the court allowed the jury to see the picture after the following colloquy:

THE COURT: Just as to evidentiary foundation only, any objection?

[COUNSEL]: Well, I—I renew the same objection as I’ve—I—

THE COURT: I appreciate that, the objection is there.  As to an evidentiary foundation that she’s attempted to put down, do you have any further objection you wish to cite?

[COUNSEL]:  No.

THE COURT: Okay.  Absent that then, and over the other objection earlier made, I will receive this into evidence, and it is so ordered.  Go ahead.

. . . .

THE COURT: . . . And—and for the record, I will note for the two of you that part of the foundation I am considering as sufficient, is not only the testimony of this witness, but [the complainant’s] earlier testimony. 

[¶19] We initially consider Thompson’s argument the district court erred in allowing the complainant to testify about the text messages without proper evidence of foundation.  Thompson raised a foundation argument in her pretrial motion.  This Court has said in the context of a pretrial motion to exclude evidence, a party must renew an objection at trial so the court can take appropriate action, and the party’s failure to object at trial constitutes a waiver.  
State v. Buchholz
, 2004 ND 77, ¶ 9, 678 N.W.2d 144; 
State v. Anderson
, 2003 ND 30, ¶ 7, 657 N.W.2d 245.  The record reflects Thompson did not renew her foundation objection at trial when the complainant testified about the text messages.  By failing to properly object at trial, Thompson failed to preserve this issue for review.  We therefore conclude Thompson failed to properly preserve her argument that the State did not provide proper foundation for the complainant’s testimony about the text messages. 

[¶20] Although Thompson failed to properly preserve this argument about improper foundation for review, N.D.R.Crim.P. 52(b) allows this Court to notice obvious errors not raised in the district court.  We exercise our power to consider obvious error “cautiously and only in exceptional situations where the defendant has suffered serious injustice.”  
Anderson
, 2003 ND 30, ¶ 8, 657 N.W.2d 245 (quoting 
State v. Smuda
, 419 N.W.2d 166, 168 (N.D. 1988)).  When a defendant fails to properly preserve an issue for appellate review, our standard of review requires a showing of obvious error that affects substantial rights of the defendant.  
Anderson
, at ¶ 8.  To establish obvious error, a defendant must show: “(1) error, (2) that is plain, and (3) affects substantial rights.”  
Anderson
, at ¶ 8 (quoting 
State v. Olander
, 1998 ND 50, ¶ 14, 575 N.W.2d 658).

[¶21] Rule 901(a), N.D.R.Ev., deals with the procedure for authenticating evidence and provides that the “requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.”  Rule 901(a), N.D.R.Ev., is identical to F.R.Ev. 901(a), and we may consider persuasive federal authority in construing our rule.  
See
 
State v. Manke
, 328 N.W.2d 799, 802 (N.D. 1982).  Under the federal rule, the proponent of offered evidence need not rule out all possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be; rather, the proponent must provide proof sufficient for a reasonable juror to find the evidence is what it purports to be.  
See
 
United States v. Hyles
, 479 F.3d 958, 968-

69 (8th Cir. 2007); 
United States v. Tin Yat Chin
, 371 F.3d 31, 37-38 (2nd Cir. 2004); 5 Jack B. Weinstein & Margaret A. Berger, 
Weinstein’s Federal Evidence
 § 901.02[3] (Joseph M. McLaughlin, ed., Matthew Bender 2nd ed. 2009); 5 Christopher B. Mueller & Laird C. Kirkpatrick, 
Federal Evidence
 §§ 9.1 and 9.2 (3rd ed. 2007); 5 Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, 
Federal Rules of Evidence Manual
 § 901.02[1] (9th ed. 2006).  

[¶22] Under N.D.R.Ev. 901(b)(1) and (4), examples of authentication include “[t]estimony of a witness with knowledge that a matter is what it is claimed to be,” and “[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.”  
See
 
Farm Credit Bank v. Huether
, 454 N.W.2d 710, 713-14 (N.D. 1990) (document may be authenticated by circumstantial evidence, such as events preceding, surrounding, and following transmission of writing); 
State v. Haugen
, 392 N.W.2d 799, 801-02 (N.D. 1986) (same).  

[¶23] Rule 901(a), N.D.R.Ev., treats authentication as a matter of conditional relevance to be decided under N.D.R.Ev. 104(b).  
R & D Amusement Corp. v. Christianson
, 392 N.W.2d 385, 386 (N.D. 1986).  If the court decides evidence is what its proponent claims it to be, the court may admit the evidence and the question of its weight is for the trier-of-fact.  
Id.
  Appropriate authentication under N.D.R.Ev. 901 is primarily within the discretion of the district court, and we will not reverse the court’s decision absent an abuse of discretion.  
R & D Amusement
, at 386.

[¶24] Although this Court has not previously considered an issue about the foundational requirements for the admissibility of text messages, other courts have held that similar electronic messages were authenticated by circumstantial evidence establishing the evidence was what the proponent claimed it to be.  
See
 
United States v. Siddiqui
, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (e-mails properly authenticated when they included defendant’s e-mail address, the reply function automatically dialed defendant’s e-mail address as sender, messages contained factual details known to defendant, messages included defendant’s nickname, and messages were followed with phone conversations on same topic); 
United States v. Tank
, 200 F.3d 627, 630-

31 (9th Cir. 2000) (foundational requirement for chat room conversation established when defendant admitted he used screen name “Cessna” when he participated in recorded conversations, several co-conspirators testified he used that name, and defendant showed up at meeting arranged with person using screen name “Cessna”); 
United States v. Simpson
, 152 F.3d 1241, 1249-50 (10th Cir. 1998) (authentication established when chat room printout showed individual using name “Stavron” gave officer defendant’s name and address and subsequent e-mail exchanges indicated e-

mail address belonged to defendant); 
United States v. Safavian
, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (e-mail messages held properly authenticated when the e-mail addresses contain distinctive characteristics including the e-mail addresses and a name of the person connected to the address, the bodies of the messages contain a name of the sender or recipient, and the contents of the e-mails also authenticate them as being from the purported sender to the purported recipient); 
Dickens v. State
, 927 A.2d 32, 36-38 (Md. Ct. Spec. App. 2007) (threatening text messages received by victim on cell phone were properly authenticated when circumstantial evidence provided adequate proof message was sent by defendant); 
Kearley v. Mississippi
, 843 So.2d 66, 70 (Miss. Ct. App. 2002) (e-mails adequately authenticated when witness vouched for accuracy of e-mail printouts and police officer testified defendant admitted sending e-mails); 
State v. Tayler
, 632 S.E.2d 218, 230-31 (N.C. Ct. App. 2006) (text messages properly authenticated when telephone employees testified about logistics for text messages and about how particular text messages were stored and received and messages contained sufficient circumstantial evidence the victim was the person who sent and received the messages); 
In re F.P.
, 878 A.2d 91, 93-95 (Pa. Super. Ct. 2005) (instant messages properly authenticated through circumstantial evidence including screen names and context of messages and surrounding circumstances); 
Massimo v. State
, 144 S.W.3d 210, 215-17 (Tex. App. 2004) (e-mails admissible when victim recognized defendant’s e-mail address, e-mails discussed things only the victim, defendant, and few others knew, e-mails written in way defendant would communicate, and third-party witnessed defendant sending similar threatening e-

mail); 
see generally
 5 Jack B. Weinstein & Margaret A. Berger, 
Weinstein’s Federal Evidence
, at § 901.08[3] and [4]; 5 Christopher B. Mueller & Laird C. Kirkpatrick, 
Federal Evidence
, at § 9:9; 5 Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Copra, 
Federal Rules of Evidence Manual
, at § 901.02[12].

[¶25] In 
F.P.
, 878 A.2d at 95 (citation and footnote omitted), the Pennsylvania Superior Court aptly rejected an argument that electronic messages are inherently unreliable because of the messages’ relative anonymity:

Essentially, appellant would have us create a whole new body of law just to deal with e-mails or instant messages.  The argument is that e-mails or text messages are inherently unreliable because of their relative anonymity and the fact that while an electronic message can be traced to a particular computer, it can rarely be connected to a specific author with any certainty.  Unless the purported author is actually witnessed sending the e-mail, there is always the possibility it is not from whom it claims.  As appellant correctly points out, anybody with the right password can gain access to another’s e-mail account and send a message ostensibly from that person. However, the same uncertainties exist with traditional written documents.  A signature can be forged; a letter can be typed on another’s typewriter; distinct letterhead stationary can be copied or stolen.  We believe that e-mail messages and similar forms of electronic communication can be properly authenticated within the existing framework of Pa. R.E. 901 and Pennsylvania case law. We see no justification for constructing unique rules for admissibility of electronic communications such as instant messages; they are to be evaluated on a case-by-case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity.

[¶26] Here, the district court heard sufficient evidence from the complainant, including the circumstances of that day and his knowledge of Thompson’s cell phone number and signature on text messages, to authenticate the complainant’s testimony about the text messages he received on October 31, 2008.  That evidence was sufficient to authenticate the complainant’s testimony under N.D.R.Ev. 901(b)(1) and (4).  We conclude the court did not abuse its discretion in admitting the complainant’s testimony about the text messages.  Because Thompson has failed to establish error, the first inquiry under our framework for analyzing obvious error, we conclude the court did not commit obvious error in admitting the complainant’s testimony about the text messages.  

[¶27] Thompson also claims the State failed to provide proper foundation for the admission of the picture of the profane and threatening text message.

[¶28] The proper foundation for the picture of the text message required sufficient evidence that the picture was what it purported to be.  
See
 N.D.R.Ev. 901.  Here, there was no testimony from the person who took the picture of the text message to show the picture was what it purported to be.  
See
 
State v. Heasley
, 196 N.W.2d 896, 905-06 (N.D. 1972) (photographer testified pictures were accurate representation of what he saw on date of pictures).  However, Thompson did not argue in the district court that the picture of the text message did not correctly and accurately depict the text message, and the district court decided the testimony of the complainant and Thompson established sufficient foundation for the admission of that picture.  Their testimony established Thompson’s cell phone number and distinctive signature, which were on the picture of the text message admitted into evidence.  The complainant’s testimony further established that messages from Thompson were depicted on his phone with the label “Fr: Jen,” which was also on the picture of the text message admitted into evidence.  

[¶29] To the extent Thompson properly preserved her argument about lack of foundation for the picture of the text message, we conclude the court’s decision to admit the picture was not arbitrary, capricious, or unreasonable, and was not an abuse of discretion.

IV

[¶30] Thompson also argues the evidence relating to the text messages was inadmissible hearsay.  

[¶31] Under N.D.R.Ev. 801(d)(2)(i), a party’s own statement is not hearsay.  
State v. Streeper
, 2007 ND 25, ¶ 18, 727 N.W.2d 759; 
see
 
In re Disciplinary Bd. v. Giese
, 2003 ND 82, ¶ 11, 662 N.W.2d 250; 
Starr v. Morsette
, 236 N.W.2d 183, 187 (N.D. 1975).  Subject to proper foundation, text messages sent from Thompson’s phone represent her statements under N.D.R.Ev. 801(d)(2)(i), and we conclude the court did not abuse its discretion in overruling Thompson’s hearsay objection to the evidence about the text messages.

V

[¶32] Thompson argues the district court erred in admitting into evidence the picture of the profane and threatening text message under the pretext of impeachment.  This Court reviews the admission of evidence for impeachment under the abuse-of-

discretion standard.   
See
 
State v. Stewart
, 2002 ND 102, ¶ 9, 646 N.W.2d 712.  We have concluded the district court did not abuse its discretion in deciding the State provided adequate foundation for admission of the picture of the text message.  In view of Thompson’s equivocation about actually sending that message, we further conclude the district court’s decision to admit the picture of the text message for impeachment was not arbitrary, capricious, or unreasonable and was not an abuse of discretion.

VI

[¶33] We affirm the judgment.  However, because the judgment erroneously states it was based on Thompson’s guilty plea, we remand to the district court to correct that clerical error.  

[¶34] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.