**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 19 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   22-10278 |
| Plaintiff-Appellee, | D.C. No. 2:19-cr-00090-KJM-1 |
| v. | |
| ROBERT PIERRE DUNCAN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Submitted January 10, 2024**
San Francisco, California

Before:  SILER,*** CLIFTON, and M. SMITH, Circuit Judges.

In March 2022, a California jury convicted Robert Duncan of trafficking a 17-

year-old victim by befriending her and then inducing her to engage in prostitution

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*       The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

for his sole profit. While Duncan primarily sold his prostitutes—including the victim—in person on the Oakland "blade," he also set up online advertisements on adult websites. Two of these advertisements of the victim included multiple pictures of the victim in her underwear, a description of her, the prices Duncan would charge, and his own phone numbers. At trial, the government successfully introduced PDF copies of these advertisements as evidence. On appeal, Duncan argues that the trial court's decision to admit this evidence violated the Rules of Evidence because the government failed to properly authenticate the advertisements and that his conviction should therefore be vacated. Finding no error, we affirm the judgment.

The district court's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) ("We review a district court's finding that evidence is supported by a proper foundation for an abuse of discretion."). If we find admission of the evidence to be a mistake, we then proceed to determine if it was a harmless error. *See United States v. Mehrmanesh*, 689 F.2d 822, 832 (9th Cir. 1982) (examining a mistaken evidentiary ruling for harmless error). Reversal is warranted only if any "error more likely than not affected the verdict." *United States v. Workinger*, 90 F.3d 1409, 1412 (9th Cir. 1996).

To show that evidence is admissible, the proponent must put forward "evidence sufficient to support a finding that the item is what the proponent claims

it is." Fed. R. Evid. 901(a). Bearing this burden is simply a matter of making "a prima facie showing of authenticity" sufficient for a reasonable jury to "find in favor of authenticity or identification." *Tank*, 200 F.3d at 630 (quoting *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985)). Once the prima facie case is made, "[t]he government must also establish a connection between the proffered evidence and the defendant." *Id*.

Here, the government put forth the testimony of FBI Special Agent Schofield. On October 11, 2018, Agent Schofield discovered two online prostitution advertisements that included pictures of the victim alongside Duncan's phone number. Using his government computer, he utilized the "print to PDF" feature to convert the webpages "to a file that could be saved on the computer." Agent Schofield testified that the exhibits the government sought to introduce were "fair and accurate depictions" of what he saw online, and testified to the website where he obtained them. He also testified that he had utilized this feature "probably hundreds" of times and had never known it to change the content of the webpage. The only information added to the file was a small date stamp and a URL indicating the origin of the file. The government then connected the exhibits to Duncan by referring to the listed phone numbers, which had already been shown to belong to him.

Duncan objected that the exhibits lacked foundation. Specifically, he argued

that the government failed to prove that Duncan himself had authored the advertisements. The court overruled the objection and admitted the evidence, reasoning that while the government could not definitively say at the time of admittance that Duncan authored or created the advertisements, the government had made a prima facie case of their authenticity—that is, the online prostitution advertisements were what the government purported them to be—and that there was sufficient connection between the advertisements and Duncan.

Because we agree with the district court that the government sustained its burden to make a prima facie showing of authenticity and to connect the exhibits to Duncan, we hold that the district court did not abuse its discretion in admitting them. The purpose of Agent Schofield's testimony was to prove that the exhibits were in fact true and accurate representations of what he saw on the internet that day. His testimony was not presented to prove that Duncan actually authored the posts. Once the government proved that the exhibits were accurate copies of the prostitution advertisements that Agent Schofield observed online, it was able to connect those exhibits to Duncan through the phone numbers in the advertisements.

Duncan's reliance on the Seventh Circuit's decision in *United States v. Jackson*, 208 F.3d 633 (7th Cir. 2000), is unavailing. In *Jackson*, the Seventh Circuit affirmed a lower court's decision to exclude screenshots from a white supremacist chat room because they could not be authenticated under Rule 801. *Id*. at 637-38.

4

However, the facts of the authentication dispute in *Jackson* are readily distinguishable. In that case, there was significant evidence in the record of the proponent's untrustworthiness, leading the trial court to conclude that the proponent failed to meet her prima facie burden that the screenshots were what she claimed them to be, "as opposed to being slipped onto the groups' websites by [the proponent] herself, who was a skilled computer user." *Id*. at 638. In this case, however, Duncan never argued to the district court that Agent Schofield was untrustworthy in his testimony authenticating the exhibits. Furthermore, the government provided further evidence—apart from Agent Schofield's testimony— to make a prima facie showing that the online prostitution advertisements were what the government claimed them to be.

Evaluated under the Rule 901 standard as expounded in *Tank*, "the government made an adequate foundational showing of the relevance and the authenticity" of the online prostitution advertisements. *Tank*, 200 F.3d at 631. The district court did not abuse its discretion in admitting them, and once properly admitted, it was up to "the jury to decide what weight to give that evidence." *Id*.

**AFFIRMED**.