**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jay KERR, Defendant–Appellant.**

**No. 91–30345.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1992.

Decided Dec. 8, 1992.

David Z. Chesnoff, Goodman & Chesnoff, Las Vegas, NV, for defendant-appellant.

James E. Seykora, Asst. U.S. Atty., Billings, MT, for plaintiff-appellee.

Before: WRIGHT, HUG and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

We have said it before and we shall have to say it again: a prosecuting attorney may not and should not vouch for witnesses. Jay Kerr appeals his conviction for conspiracy to distribute cocaine. We find that prosecutorial misconduct throughout his trial affected the jury's verdict and we reverse.

I.

An informant alerted the FBI about an ongoing scheme to smuggle drugs from Southern California into Billings, Montana. The investigation turned up a multi-layered conspiracy with many participants. Kerr, an actor who has appeared in Disney movies and a soap opera, was named as one of the California suppliers. Along with two others, he was indicted on nine counts of conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. Several other suspects, including Jacobson, Rider, Ludden and Butler, pled guilty and testified against Kerr at his trial. A jury subsequently convicted him on all nine counts.

Kerr appeals on several grounds. First, he argues that the district court erred by admitting similar acts evidence in violation of Fed.R.Evid. 404(b). Next, he alleges that the government withheld favorable evidence. Third, he contends that prosecutorial misconduct, including vouching for government witnesses, referring to evidence outside the record and use of a confidential pretrial services report, affected the jury's verdict.

## II.

The district court allowed testimony that Kerr possessed a small amount of cocaine when he was arrested. The court also permitted testimony describing his pending indictment for cocaine possession. Kerr argues that this evidence was highly prejudicial because it concerned events too remote in time from the alleged offense. Authorities arrested him in 1990 but the government charged a conspiracy between 1987 and 1988.

■ Admission of similar acts evidence under Fed.R.Evid. 404(b) is reviewed for an abuse of discretion. *United States v. Hill*, 953 F.2d 452, 455 (9th Cir.1991). We find no error. Defense counsel said during opening statement that Kerr possessed cocaine at the time of arrest. If the defendant introduces similar acts evidence first, the government may step through the "open door." *United States v. Segal*, 852 F.2d 1152, 1155 (9th Cir.1988). Furthermore, the district court properly instructed the jury that this evidence could be considered only as to Kerr's motive and/or intent and for no other purpose.

■ We also find no error in the government's withholding of evidence. Kerr complains that the prosecutor delayed in turning over FBI debriefing statements and grand jury testimony of key witnesses. He also contends that the government improperly withheld Butler's personal notebook.

After a prosecution witness testifies, the Jencks Act requires that the government produce any "statements" made by the witness in its possession that relate to the subject matter of the trial testimony. *See* 18 U.S.C. § 3500; *United States v. Pisello*, 877 F.2d 762, 768 (9th Cir.1989). The government turned over the FBI statements on the second day of trial. After Rider's direct examination, the defense demanded production of some portions that had been deleted. Upon the district court's order, the government released the deleted portions. Nearly all of Rider's grand jury testimony was turned over as well, except for portions regarding an unrelated homicide.

Kerr does not explain how earlier access to these materials would have affected the outcome of his trial. The information described a possible source of the cocaine. The government never charged that Kerr was the sole supplier and therefore the information was not critical to defense counsel's attempt to impeach the prosecution witnesses. Kerr fails to demonstrate prejudice affecting substantial rights. *See United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986).

■ Having found that the government complied with the Jencks Act, we must also consider whether it met its obligations under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963), to surrender favorable evidence that is "material either to guilt or to punishment." Evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

As we have said, the grand jury testimony, FBI debriefing statements and Butler's notebook were not material evidence. They described a possible source of Kerr's cocaine, an unrelated homicide and other tangential matters. None of this information would cast serious doubt on the charges Kerr faced.

## III.

We now turn to the more troubling aspect of this case: the allegations of prosecutorial misconduct. During his closing argument, the United States attorney made these remarks:

MR. SEYKORA: "Very frankly, ladies and gentlemen, it is very seldom you get four people, the government was lucky enough to, to have hand-to-hand deals with the defendant like they did here. So it is going to come down to your judging the credibility of each one of those four individuals. Were they hoodwinking [DEA Agent] Mr. Zarndt when I sat there on part of the interviews, were they hoodwinking me, were they hood-

winking the Court, when the Court accepts their plea agreements when they agreed to cooperate?"

MR. O'DONNELL: "I object to him putting you in this, Judge. You don't belong."

THE COURT: "All right. Sustained. I agree."

In addition to this exchange, the transcript also reveals other instances of vouching for government witnesses that went unchallenged:

"I think he (Jim Ludden) was very candid."

"I don't think it was a pat story, because there are variations."

"I think he (Al Butler) was candid. I think he was honest."

"Al Butler was candid with you folks."

"The question is, were they hoodwinking you when they testified? I think not."

We review the remarks made in closing argument for harmless error. Because Kerr failed to object to the other instances of vouching, we examine the context of the entire record to determine whether there was plain error. *See United States v. Wallace*, 848 F.2d 1464, 1473 (9th Cir.1988).

■ In trying to bolster a witness's credibility, a prosecutor may not overstep the bounds of propriety and fairness. Improper vouching occurs when the prosecutor places "the prestige of the government behind the witness" by providing "personal assurances of [the] witness's veracity." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981).

■ Here, an experienced United States attorney deliberately introduced into the case his personal opinion of the witnesses' credibility. He repeatedly ignored his special obligation to avoid improper suggestions and insinuations. A prosecutor has no business telling the jury his individual impressions of the evidence. Because he is the sovereign's representative, the jury may be misled into thinking his conclusions have been validated by the government's investigatory apparatus.

■ The argument that these remarks merely "righted the scale" and were invited responses to statements made by Kerr's counsel is not persuasive. Any attacks on the credibility of the government witnesses were legitimate tools of advocacy and did not, standing alone, justify such a response. *See United States v. Smith*, 962 F.2d 923, 934 (9th Cir.1992).

■ The Assistant United States Attorney added fuel to the fire by suggesting in his closing remarks that the district court, in accepting the plea agreements of the witnesses, had been satisfied as to the truthfulness of their proposed testimony. A prosecutor must not abuse his position and his duty to see justice done by invoking the authority of the court. "That particular form of vouching goes beyond the mere proffer of an institutional warranty of truthfulness; rather, it casts the court as an active, albeit silent, partner in the prosecutorial enterprise." *Id.* at 936.

To determine whether the prosecutor's misconduct affected the jury's verdict, we look first to the substance of a curative instruction. *See United States v. Simtob*, 901 F.2d 799, 806 (9th Cir.1990). Judge Shanstrom's instructions to the jury were general rather than specific. He reminded the jurors that they "are the sole judges of the credibility of the witnesses," along with providing other routine directions for evaluating testimony.

In *Simtob*, we held that more substantial measures are needed to address the crisis situation caused by prejudicial prosecutorial remarks. There, the prosecutor overstepped his bounds by offering to immunize a witness in open court, portraying the government as a guarantor of the testimony's truthfulness. *Id.* at 805. The trial judge gave only general advice to the jury that they, alone, were to determine the witnesses' credibility. We observed that "it is very doubtful that the generalized observations of the court really conveyed a sufficient sense of judicial disapproval of both content and circumstances needed to dispell [sic] the harm in the core of the prosecutor's statements." *Id.* at 806.

Similarly, we find that instructions given here did not neutralize the harm. They did not mention the specific statements of the prosecutor and were not given immediately after the damage was done. A trial judge should be alert to deviations from proper argument and take prompt corrective action as appropriate. *Roberts,* 618 F.2d at 534. We do not mean to excuse Kerr's trial counsel for his failure to object throughout the course of trial. Admonitions should have been requested, for the benefit of the jury and to prevent an overzealous attorney from committing prosecutorial overkill.

In addition to the content of curative instructions, we must also examine the closeness of the case. *United States v. Sanchez,* 944 F.2d 497, 499 (9th Cir.1991). Here, the testimony of the four "vouched" witnesses was crucial to the government's case and the prosecutor's argument. Only indirect evidence connected Kerr to the conspiracy. The government introduced telephone and travel records corroborating that some of the witnesses had communicated with Kerr. This did not, however, independently prove any wrongdoing. The government's theory of the case depended on the detailed testimony of Kerr's alleged coconspirators. As the prosecutor said in closing argument, the outcome was "going to come down to your judging the credibility of each one of those four individuals."

Because of the closeness of the case and the ineffective admonitions, we find that the repeated instances of prosecutorial vouching affected the jury's verdict. Kerr's other claims of prosecutorial misconduct need not be addressed.[1] We reverse for plain error.

REVERSED.

---

[1]. Among other things, Kerr objects to the prosecutor's use of a confidential pretrial services report. Pretrial services information "is not admissible on the issue of guilt in a criminal judicial proceeding." 18 U.S.C. § 3153(c)(3). We note, however, that courts have ruled that such information may be used to impeach a defendant. *See United States v. Stevens,* 935 F.2d 1380, 1395 (3d Cir.1991); *United States v. Wilson,* 930 F.2d 616, 619 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991).