2 F.3d 1158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Trina Devay HARPER, Defendant-Appellant.
 No. 92-50481.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 21, 1993.*
Decided Aug. 5, 1993.
 
 Before: BROWNING, TANG and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Trina Devay Harper appeals her conviction following a jury trial for conspiracy and aiding and abetting an attempted bank robbery in violation of 18 U.S.C. Secs. 2, 371, 2113(a), and carrying a firearm during a crime of violence in violation of 18 U.S.C. Sec. 924(c)(1). Harper contends that the district court erred by (1) admitting evidence of an accomplice's prior statement under Fed.R.Evid. 801(d)(1)(B), and (2) denying her motion for mistrial because the prosecutors improperly vouched for the credibility of witnesses during closing arguments. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 We review for abuse of discretion the district court's admission of a prior statement under Fed.R.Evid. 801(d)(1)(B), United States v. Miller, 874 F.2d 1255, 1271 (9th Cir.1989), and the district court's denial of a motion for mistrial, United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992). Improper admission of hearsay evidence and improper prosecutorial vouching are both subject to harmless error analysis. United States v. Harrison-Philpot, 978 F.2d 1520, 1527 n. 5 (9th Cir.1992) (hearsay), cert. denied, 113 S.Ct. 2392 (1993); United States v. Kerr, 981 F.2d 1050, 1053 (9th Cir.1992) (vouching).
 
 
 4
 * Prior Statement
 
 
 5
 Fed.R.Evid. 801(d)(1)(B) provides that a prior statement is admissible if it is (1) consistent with the witness's trial testimony and (2) offered to rebut a charge of recent fabrication or improper influence or motive. Fed.R.Evid. 801(d)(1)(B); Miller, 874 F.2d at 1271. In addition, the prior statement must have been made before the witness had a motive to fabricate. Miller, 874 F.2d at 1271.
 
 
 6
 According to evidence presented at trial, Harper and her co-defendants conspired to rob Bank of America automated teller machines (ATMs) by causing bill trap malfunctions[1] and forcing their way into ATM vaults when service technicians were dispatched to repair the malfunctions. During the government's case-in-chief, Leslie Hutchinson testified that he was recruited to join the conspirators and gave a detailed description of their bank robbery methods.
 
 
 7
 After the government's case-in-chief, Travis and Elsa Harper, Harper's aunt and uncle, gave testimony which contradicted Hutchinson's testimony that he met them several times in the course of the conspiracy. The government then proffered the testimony of Detective Mark Giambalvo regarding Hutchinson's prior statement to him regarding the conspiracy to rebut Travis and Elsa Harper's testimony. Harper objected that such testimony would be hearsay and improper rebuttal because Travis and Elsa Harper had not charged Hutchinson with a recent fabrication. The district court admitted Giambalvo's testimony, which was not limited to the subject of Hutchinson's meetings with Travis and Elsa Harper, but instead recapitulated much of Hutchinson's testimony regarding the conspiracy.
 
 
 8
 Harper contends that the district court erred by admitting Giambalvo's testimony because (1) Hutchinson's prior statement was not made before he had a motive to fabricate and (2) the testimony went beyond its proffered purpose of rebutting Travis and Elsa Harper's testimony. Even assuming that there was error, we conclude that it was harmless.
 
 
 9
 Here, the evidence against Harper was overwhelming. The government corroborated Hutchinson's testimony by introducing empty ATM cash cassettes which, according to Hutchinson's testimony, Harper offered him money to dispose of. In addition, the government presented evidence that: Harper was trained to service ATMs and worked for Pederson Communications, the company which services ATMs during non-banking hours, for a year ending in July 1991; on September 19 and November 10, 1991, Harper and two co-defendants were observed surveilling ATMs after double bill trap malfunctions, one of which was caused by an ATM access card borrowed from an acquaintance of the co-defendants; on September 23, 1991, individuals employing the methods described by Hutchinson robbed an ATM after a bill trap malfunction caused by an ATM access card borrowed from the nephew of one of Harper's co-defendants; on November 25, 1991, several of Harper's co-defendants were observed surveilling ATMs after a double bill trap caused by an ATM access card borrowed from a friend of Harper; on the same evening, three phone calls were made from a phone booth near the co-defendants' surveillance point to Harper and another co-defendant; and on November 27, 1991, Harper was apprehended near the ATM surveilled on November 25, 1991 after she and two co-defendants drove to the ATM, a co-defendant caused double bill trap malfunctions, and other co-defendants attempted to force their way into the ATM vaults when service technicians arrived to repair the malfunctions. In light of the overwhelming evidence against Harper, we conclude that the admission of his testimony was harmless error. See United States v. Todd, 964 F.2d 925, 931 (9th Cir.1992) (erroneous admission of evidence harmless where overwhelming evidence supported the conviction); United States v. Lui, 941 F.2d 844, 848 (9th Cir.1991) (same).
 
 II
 Prosecutors' Remarks
 
 10
 "As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993); see also United States v. Young, 470 U.S. 1, 8-9 (1985). A prosecutor's use of personal pronouns such as "I" or "we" is not improper, however, if he is simply arguing an inference from evidence in the record. See United States v. Toomey, 764 F.2d 678, 681 (9th Cir.1985) (prosecutor's statement, "[w]e know that the delivery of heroin base in [Frankfurt,] West Germany occurred on April 28," was not error where the statement was a permissible inference from the record), cert. denied, 474 F.2d 1069 (1986); see also Necoechea, 986 F.2d at 1279 (prosecutor's statement, "[w]hy, ladies and gentlemen, if [Gibson's] lying, isn't she doing a better job of it? I submit to you, ladies and gentlemen, that she's not lying. I submit to you that she's telling the truth," did not improperly reflect his personal beliefs).
 
 
 11
 Here, the prosecutors used the term "we" frequently when summarizing the evidence against the defendants during closing arguments. They used it to refer to the government (e.g., "[l]adies and gentlemen, we showed you those cash cassettes"), all persons present in the courtroom (e.g., "[w]e know defendant[s] Riley and ... Anderson were in that car. Because when it was stopped by Long Beach police officers, they identified themselves"), and, on two occasions, the government's opinion as to the guilt of the defendants: (1) "The government doesn't know exactly when this conspiracy started or how many people were actually involved in the conspiracy. But what we do know is that these four defendants ... worked together during the fall of 1991 in a conspiracy to rob ATM service technicians at gun point;" (2) "We have told you all along, we don't know all of the co-conspirators in this case. We just know that these four, ... we know that they were in."
 
 
 12
 Harper contends that the cumulative effect of the prosecutors' use of the word "we" during closing arguments was so prejudicial as to require reversal. Even assuming that there was error, we conclude that it was harmless.
 
 
 13
 As we have already stated, the evidence against Harper was overwhelming. In light of the overwhelming evidence against Harper, we conclude that any error was harmless. See Young, 470 U.S. at 19-20; cf. United States v. Kerr, 981 F.2d 1050, 1054 (9th Cir.1992) (reversing for plain error where prosecutor repeatedly vouched for witnesses because of the closeness of the case).
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A bill trap occurs when an ATM shuts down because a customer withdrew cash from the ATM but failed to take the cash from the dispenser. A double bill trap occurs when two ATMs shut down at the same location