NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0691n.06
Filed: November 13, 2008

No. 06-2425

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| | ) | |
| LIONEL R. BEARD, | ) | O P I N I O N |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: MARTIN and NORRIS, Circuit Judges, and STAMP, Senior District Judge.*

FREDERICK P. STAMP, JR., Senior District Judge. Lionel Beard was charged in a Fourth Superseding Indictment on various counts relating to his involvement in a conspiracy to distribute controlled substances in Lansing, Michigan. Defendant Beard pleaded not guilty and proceeded to a jury trial. Thereafter, the jury returned a guilty verdict on numerous counts, including Count 1, conspiracy to possess and/or distribute heroin and powder cocaine. At sentencing, Lionel Beard received a within-guideline sentence. Beard now challenges his convictions and the reasonableness of his sentence. For the reasons that follow, we AFFIRM the judgment of the district court.

---

*The Honorable Frederick P. Stamp, Jr., United States Senior District Judge for the Northern District of West Virginia sitting by designation.

1

1.    Material variance

For the first time on appeal, Lionel Beard argues that the proof at trial constituted a material variance from Count 1 of the indictment, which charged him with conspiracy to possess and/or distribute heroin beginning in the early 1980s and continuing through September 2005. Beard claims that the evidence at trial supported a finding of multiple conspiracies rather than the single conspiracy for which he was indicted and convicted. Because Beard did not raise the issue of variance below, this Court reviews for plain error. *United States v. Wilson,* 168 F.3d 916, 923 (6th Cir. 1999).

Where the indictment alleges a single conspiracy, a variance occurs when the evidence at trial, viewed in a light most favorable to the government, "can reasonably be construed *only* as supporting a finding of multiple conspiracies." *United States v. Caver*, 470 F.3d 220, 236 (6th Cir. 2006) (citations omitted). In order to obtain reversal due to a variance, a defendant must show: (1) a variance and (2) that the variance affected some substantial right. *United States v. Kelley*, 849 F.2d 999, 1002 (6th Cir.1988). A substantial right belonging to the defendant is affected only if the defendant shows prejudice to his ability to defend himself or to the overall fairness of the trial. *United States v. Bouquett,* 820 F.2d 165, 168 (6th Cir. 1987), abrogated on other grounds by *United States v. Sanderson*, 966 F.2d 184 (6th Cir. 1992).

In this case, it is unnecessary to reach the second prong, because a variance did not occur between the indictment and the evidence. Beard's material variance argument fails because evidence supports the jury's conclusion that Beard was part of a single, long-term conspiracy to distribute heroin and cocaine in Lansing, Michigan. Testimony was elicited that beginning in the mid-1980s,

when Beard was approximately 19 years old, Beard and others sold heroin and cocaine supplied by Beard's mother, Elnora Beard. Beard continued to sell heroin and cocaine for his mother until he was sent to prison in 1989. Despite the defendant's contention otherwise, the fact of Beard's incarceration from 1989 to 1995, does not prevent a finding of a single conspiracy because Beard did not put forth any evidence to support a claim that he withdrew from the conspiracy. Indeed, numerous witnesses testified that, upon release from prison, Beard quickly began selling heroin and cocaine to many of the same distributors and customers to whom Elnora Beard, who suffered a debilitating stroke in 2000, had previously sold. The continuity of distributors, customers, location, and the unique dual packaging of heroin and cocaine bindles over the course of approximately two decades supports the jury's finding of a single conspiracy. Thus, Beard has failed to show that plain error occurred below.

2.    Prosecutorial misconduct

Next, Beard contends that he was denied his due process right to a fair trial because the government engaged in prosecutorial misconduct by (1) introducing improper bad acts evidence against him and (2) vouching for the truthfulness of government witnesses who had entered into plea agreements pursuant to Federal Rule of Criminal Procedure 11. Beard asserts that his prosecutorial misconduct claims must be reviewed *de novo* because they contain mixed questions of law and fact. However, because Beard did not object to the alleged misconduct at trial, he has forfeited the arguments and this Court's review is limited to the plain error standard.

a.    Bad acts evidence

Beard generally complains of "bad acts" and "improper hearsay" evidence introduced against him at trial.  Beard contends that, because the evidence at trial did  not support the single conspiracy allegation, the introduction of hearsay and bad acts evidence against him regarding activities occurring prior to 2000 was error.  Because we have concluded that a reversible variance did not occur at trial as to Count 1, it was not plain error for the district court to permit the introduction of evidence linking Beard with drug use and distribution activities in the 1980s and 1990s.

b.    Improper vouching

Lionel Beard also contends that the prosecutor improperly vouched for the credibility of government witnesses when questioning those witnesses on direct examination about their plea agreements. The record, however, does not support a finding of such prosecutorial misconduct.

When reviewing claims of prosecutorial misconduct, this Court employs a two-step test. First, it must be determined whether the statements were improper.  *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999) (citations omitted).  Second, if the statements appear improper, the Court must look to see if they were flagrant and warrant reversal.  *Id*.  In determining flagrancy, the following factors are considered: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.  *Id.*  If the statements were improper but not flagrant, a defendant's conviction will be reversed only if:  1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury.  *Id.*

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *Id.* at 550; *see also United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."). Courts have also found improper vouching where prosecutors imply special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony. *Id.* (citing *United States v. Carroll,* 26 F.3d 1380, 1388 (6th Cir. 1994) (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful)). It is not improper vouching for a prosecutor to introduce a witness's plea agreement on direct examination, even if it includes a truthfulness provision. *Francis*, 170 F.3d at 550.

Beard contends that the government improperly vouched for the credibility of cooperating witnesses by eliciting questions on direct examination about their obligations, pursuant to their plea agreements, to testify truthfully. Beard points in particular to the prosecutor's examination of Willie Frazier. Although the prosecutor emphasized the obligation of cooperating witnesses in general, and Willie Frazier in particular, to provide truthful testimony, he did not make any blatant statements of personal opinion regarding the credibility of those witnesses. In his questions to Frazier about his plea agreement, the prosecutor elicited testimony that Frazier understood that, under the terms of his plea agreement, he would fully cooperate with the government by testifying at trial and that if he testified untruthfully he would be prosecuted. The prosecutor also reviewed in detail the terms of the proffer letter that Frazier signed prior to signing the plea agreement. The prosecutor highlighted

5

Frazier's "obligation to do nothing other than candidly reveal the whole truth about all matters relevant to [his] potential as a witness." He also reviewed the government's promise that "nothing said or revealed by [Frazier] during the attempted negotiation of [a plea agreement] would be used against [Frazier] as long as [he] tell[s] the truth."

We do not believe that the prosecutor's questioning in this regard was outside the bounds of propriety. Indeed, a prosecutor is permitted to "elicit testimony about [a plea agreement's] terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility." *Francis*, 170 F.3d at 550.

Moreover, assuming for the sake of argument that the prosecutor's questioning on the truthfulness obligations of witness Frazier was improper, it was clearly not flagrant. The jury was unlikely to have been misled because the Court interjected a cautionary instruction during the prosecutor's examination of Frazier reminding the jury that "the government has no special way of telling when someone is telling the truth" and that "a decision as to whether someone is telling the truth is yours." Further, the government's detailed inquiry into Frazier's truthfulness obligations was largely isolated. The prosecutor's review of the plea and proffer agreements of its other witnesses was largely cursory and did not deal at length with promises of truthful testimony. Accordingly, we find that the prosecutor's questioning did not constitute prosecutorial misconduct and that Beard's due process right to a fair trial was not violated.

3. Drug quantity calculation

We next address Beard's contention that the drug quantity calculation in his Presentence Investigation Report ("PSR") was plainly erroneous, was inconsistent with the quantities charged

in the indictment and the jury verdict and proofs at trial, and adversely affected his substantial rights. Because Beard did not object at sentencing to the drug quantity calculations that he now appeals, appellate review of those calculations is for plain error. *United States v. Treadway*, 328 F.3d 878, 883 (6th Cir. 2003).

Again relying on the argument that the government failed to prove the existence of a single conspiracy at trial, Beard contends that an appropriately conservative drug quantity calculation must be limited to his drug involvement from 2002 to 2005. As discussed above, however, the evidence supports the jury's finding of a single conspiracy. Thus, the PSR appropriately calculated the drug quantity attributable to Beard based on a longer period of time than the three year period urged by the defendant.

4.      Substantive reasonableness of sentence

Finally, Beard challenges the reasonableness of his sentence. This Court reviews the substantive reasonableness of sentences for abuse of discretion. Beard contends that the district court placed unreasonable weight on factors related to his character and personal life. Beard also asserts that the district court selected his sentence to "punish him for the ills of society rather than for his specific conduct." The defendant's contentions are without merit. The transcript of the sentencing hearing reveals that the district court considered the factors under 18 U.S.C. § 3553(a). The district judge concluded that based on those factors and in light of Beard's assault on Willie Frazier at the Newaygo County, Michigan jail, a sentence at the lowest end of the guidelines (360 months incarceration) was not warranted. Nothing in the district judge's articulated reasons for imposing 420 months of incarceration gives cause for concern that an inappropriate amount of weight was accorded to any one sentencing factor. Nor does it appear from the record that the

district judge imposed sentence upon Beard based upon the general "ills of society." Accordingly, Beard has failed to rebut the presumption of reasonableness attached to his within-guidelines sentence.

II.

For the foregoing reasons, we AFFIRM the judgment and the sentence imposed by the district court.